UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CLAYTON RICHARD GORDON; | ) | |
| GUSTAVO RIBEIRO FERREIRA; | ) | |
| VALBOURN SAHIDD LAWES; NHAN | ) | |
| PHUNG VU; and CESAR | ) | |
| CHAVARRIA RESTREPO on | ) | |
| behalf of themselves and others | ) | |
| similarly situated, | ) | |
|    Plaintiffs/Petitioners, | ) | |
| | ) | |
| | ) | |
|        v. | ) | C.A. NO. 13-cv-30146-MAP |
| | ) | |
| JEH CHARLES JOHNSON, Secretary | ) | |
| of Homeland Security; ERIC H. | ) | |
| HOLDER, JR., Attorney General; | ) | |
| JOHN SANDWEG, Acting Director, | ) | |
| Immigration and Customs | ) | |
| Enforcement; SEAN GALLAGHER, | ) | |
| Acting Field Director, | ) | |
| Immigration and Customs | ) | |
| Enforcement; CHRISTOPHER | ) | |
| DONELAN Sheriff of Franklin | ) | |
| County; MICHAEL G. BELLOTTI, | ) | |
| Sheriff of Norfolk County; | ) | |
| STEVEN W. TOMPKINS, Sheriff of | ) | |
| Suffolk County; THOMAS M. | ) | |
| HODGSON, Sheriff of Bristol | ) | |
| County; and JOSEPH D. MCDONALD, | ) | |
| JR., Sheriff of Plymouth | ) | |
| County. | ) | |
|    Defendants/Respondents. | ) | |

MEMORANDUM & ORDER REGARDING
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(Dkt. Nos. 16, 83, 102, & 107)

May 21, 2014

PONSOR, U.S.D.J.

## I.  INTRODUCTION

Plaintiffs represent a class of aliens who, subsequent to their release from criminal custody, were detained by Immigrations & Customs Enforcement ("ICE") under the mandatory detention provisions of 8 U.S.C. § 1226(c).  That statute permits ICE to detain an alien "when [he or she] is released" from the predicate criminal custody -- a phrase this court has interpreted as limiting the class of individuals subject to mandatory detention to those taken into ICE custody promptly.  Three issues warrant analysis before this case reaches its terminus.

First, on March 27, 2014, the court granted Plaintiffs' motions for class certification.  Gordon v. Johnson -- F.R.D. --, 2014 WL 1274059 (D. Mass. Mar. 27, 2014).  Though it briefly presented the reasons for its decision, the court informed the parties that a more detailed memorandum would be forthcoming.

Second, Plaintiffs have filed two identical motions for summary judgment.  (Dkt. Nos. 83 & 107.)  Because this case presents a single question of law -- one already settled --

no genuine dispute of fact exists.  Accordingly, the court

will allow Plaintiffs' motions and direct the clerk to enter

judgment as a matter of law in their favor.

Finally, since summary judgment is appropriate, the

question of the proper relief must be addressed.  This

analysis presents three related issues: (1) whether 8 U.S.C.

§ 1252(f)(1) bars class-wide injunctive relief; (2) if not,

whether a permanent injunction is warranted; and (3), if so,

what the substance of the injunctive order should be.  As an

injunction here would not enjoin the operation of the law

but merely require Defendants to comply with it, and because

Plaintiffs have established a need for equitable relief, the

court will grant Plaintiffs equitable relief in the form set

forth in the conclusion of this memorandum.

## II.  BACKGROUND

A.  Factual Background

The court has previously provided a detailed discussion

of the underlying facts and statutory framework in this

case.  Gordon v. Johnson, -- F. Supp. 2d --, 2013 WL 6905352

(D. Mass. Dec. 31, 2013).  A brief summary is as follows.

Plaintiffs represent a class of aliens detained in

-3-

Massachusetts as of March 27, 2014, who were (or will be) released from criminal confinement and, after a period of time, detained by ICE pursuant to § 1226(c). That statute requires ICE to detain specified individuals -- essentially those convicted of enumerated, relatively serious, predicate crimes -- "when the alien is released." § 1226(c)(1). Unlike a companion provision, § 1226(a)(the portion of the law that provides discretionary authority to detain aliens pending removal generally), § 1226(c) appears to bar the detained individual from petitioning for conditional release ever.[1]

The named Plaintiffs' cases are representative of the class. Plaintiff Richard Gordon was released from very brief criminal custody in Connecticut and was only taken

---

[1] Whether § 1226(c) includes a reasonableness limit on the length of time an individual may be detained without an opportunity for a bail hearing is a question this court has recently addressed in Reid v. Donelan, -- F. Supp. 2d --, 2014 WL 105026 (D. Mass. Jan. 9, 2014). In that case, the court concluded that § 1226(c) includes a "reasonableness" limit, and that detention beyond six-months without a hearing is presumptively unreasonable. Id. The court then certified a class of all § 1226(c) detainees in Massachusetts who have been or will be held beyond six-months. Reid v. Donelan, 297 F.R.D. 185 (D. Mass. 2014). The parties' dispositive motions are currently under advisement.

into immigration custody some five years later.  Plaintiff
Gustavo Ribeiro Ferreira was detained by immigration
authorities three years after his release from criminal
custody.  Plaintiff Valbourn Sahidd Lawes was detained eight
months after release, and Plaintiff Nhan Phung Vu was
detained ten years after release.  Plaintiff Cesar Chavarria
Restrepo, the current class representative, was detained by
immigration authorities nearly six years after his release
from criminal custody.  All of the named Plaintiffs lived
openly -- that is, without any attempt at concealment -- and
pursued entirely law-abiding lives following their release
from criminal custody.  Nevertheless, each was detained
under § 1226(c).  Under Defendants' construction of this
statute, each Plaintiff was facing indefinite detention
without any opportunity ever to seek release under bail
conditions.

B.  <u>Procedural History</u>

Plaintiff Gordon filed a petition for habeas corpus on
August 8, 2013.  (Dkt. No. 1.)  At that time, he also filed
a Motion for a Preliminary Injunction, (Dkt. No. 2), and a
Motion for Class Certification, (Dkt. No. 16).  In response,

Defendants moved to dismiss the case.  (Dkt. No. 13.)

On September 11, 2013, the court stayed the class issue pending a resolution of Plaintiff's individual petition. (Dkt. No. 25.)  After hearing argument on October 17, 2013, the court, on October 23, 2013, granted Plaintiff's habeas petition, denied Defendants' Motion to Dismiss, and denied without prejudice Plaintiff's Motion for a Preliminary Injunction.  Gordon v. Napolitano, No. 13-cv-30146, 2013 WL 5774843 (D. Mass. Oct. 23, 2013).[2]  The court issued a memorandum detailing the reasons for its order.  Gordon v. Johnson, -- F. Supp. 2d --, 2013 WL 6905352 (D. Mass. Dec. 31, 2013).  As a result of the court's ruling, Plaintiff Gordon was provided a bond hearing on November 6, 2013, and subsequently released on bail.  (Dkt. No. 59 at p. 5.)

On November 8, 2013, Plaintiff filed a motion to amend the complaint to add three additional Plaintiffs, (Dkt. No. 55), which the court allowed on December 19, 2013, (Dkt. No. 69).  Defendants were then ordered to provide each of the new individuals -- Plaintiffs Ferreira, Lawes, and Vu --

_____

[2] On December 16, 2013, Defendants filed a Notice of Appeal challenging this decision.  (Dkt. No. 63.)

with individual hearings by March 28, 2014.  (Dkt. No. 88.)
Defendants timely complied.[3]  Plaintiffs Ferreira and Vu
have now been released on bail conditions, and bond was also
set for Plaintiff Lawes, who remains in custody.

After addressing the individual claims, the court heard
an initial argument on the class certification question on
December 19, 2013.  Though it indicated that class treatment
was likely appropriate, it concluded that the parties'
position on summary judgment would aid in the resolution of
the class question.  Accordingly, Plaintiffs filed their
first Motion for Summary Judgment on January 24, 2014.
(Dkt. No. 83.)

Shortly thereafter, Plaintiffs filed their second
motion to amend the complaint seeking to add Plaintiff Cesar
Chavarria Restrepo as a named Plaintiff.  (Dkt. No. 93.)
Recognizing that the amendment might be necessary to avoid
mootness, the court allowed that motion on March 18, 2014.
(Dkt. No. 97.)  On that date, the court also heard argument
on the class issue and on Plaintiffs' Motion for Summary

---

[3] Defendants filed a Notice of Appeal with respect to
these three Plaintiffs on April 7, 2014.  (Dkt. No. 117.)

Judgment.  It then took both matters under advisement.

On March 21, 2014, the parties provided a joint submission respecting the trajectory of the case.  (Dkt. No. 100.)  The parties agreed that if the court provided Plaintiff Chavarria relief simultaneously with its class decision, he would remain a suitable representative of the class.  (Id.)  This agreement suited the convenience of all parties, by avoiding the necessity of having continually to amend the complaint and file responsive pleadings as newly added parties obtained their remedies, to avoid mootness. Each party also indicated it would (and then did) re-file their dispositive motions as applied to the entire class. (Dkt. Nos. 105 & 107.)

On March 27, 2014, the court allowed Plaintiffs' Motions for Class Certification, granted Plaintiff Chavarria's individual habeas petition, and denied Defendants' re-filed Motion to Dismiss.  Gordon v. Johnson, -- F.R.D. --, 2014 WL 1274059 (D. Mass. Mar. 27, 2014). Plaintiff Chavarria's bond hearing occurred that same date, and he was subsequently released from custody.

As noted above, only three remaining issues require

analysis.  First, the court will detail the basis for its

class certification ruling.  (Dkt. No. 114.)  The discussion

will then turn to Plaintiffs' two identical motions for

summary judgment.  (Dkt. Nos. 83 & 107.)  The final segment

of this memorandum will look at the question of the proper

remedial order.

### III.  DISCUSSION

### A.  Motion for Class Certification

On March 27, 2014, the court certified a class of

> all aliens who are or will be detained in
> Massachusetts under 8 U.S.C. § 1226(c), whom the
> government alleges to be subject to a ground of
> removability as described in 8 U.S.C. §
> 1226(c)(1)(A)-(D), and who were not taken into
> immigration custody within forty-eight hours (or,
> if a weekend or holiday intervenes, within no more
> than five days) of release from the relevant
> predicate custody.

Gordon, 2014 WL 1274059 at *2.  Class treatment is

appropriate because Plaintiffs satisfy the requirements of

Fed. R. Civ. P. 23.

### 1.  Rule 23(a)

Fed. R. Civ. P. 23(a) includes four, well-known

elements: numerosity, commonality, typicality, and adequacy.

The burden is on the plaintiff to establish that each is

-9-

satisfied, <u>In re Eaton Vance Corp. Sec. Litig.</u>, 219 F.R.D. 38, 43 (D. Mass. 2003), and the court must ensure that each factor is met. <u>Wal-Mart Stores v. Dukes</u>, -- U.S. --, 131 S.Ct. 2541, 2551 (2011).

The first Rule 23(a) requirement is that class be "so numerous that joinder of all its members is impracticable." Rule 23(a)(1). Though no specific, numerical threshold exists, a class of forty or more is generally sufficient in the First Circuit. <u>See George v. Nat'l Water Main Cleaning Co.</u>, 286 F.R.D. 168, 173 (D. Mass. 2012). That threshold, however, is relaxed when a party seeks only declaratory or injunctive relief. <u>McGuin v. Sec'y of Health & Human Servs.</u>, 817 F.3d 161, 167 (1st Cir. 1987).

Several facts suggest that the class size here is well over that forty-person minimum. First, Plaintiffs' counsel met with twenty-nine detainees at the Franklin County Jail and House of Corrections. (Decl. of Elizabeth Badger, Dkt. No. 103, Ex. 5.) They found that roughly 28% were members of the proposed class. If one extrapolates that number, and uses the low end of the range of individuals detained by ICE under § 1226(c) in Massachusetts -- a number between 178 and

229 -- roughly forty-nine individuals populate the class. (Decl. of Michael Tan Ex. C, Dkt. No. 103, Ex. 2.)

Second, Plaintiffs presented the court with a list of more than twenty current or recent cases in Massachusetts where individuals were held under § 1226(c) but were not detained promptly upon release. (Id.) Counsel discovered these individuals through minimal interviews and contact with detainees, and the number likely represents just a fraction of the detained population.

Finally, absent class treatment, the number will simply continue to grow. Defendants have shown no inclination to alter their misconstruction of the law, and future members will continue to expand the class. This is particularly true given ICE's emphasis on detaining indefinitely all aliens in the community who were previously convicted of a predicate crime, without ever giving them the opportunity to argue for bail, regardless of how old their criminal conviction may be or how long these individuals may have been holding jobs and living crime-free in this country. (Dkt. No. 103, Ex. 3.)

More importantly, even if the number hovered slightly

-11-

below the forty person threshold, joinder would still be impracticable in this case, and class certification would be appropriate. Plaintiffs are dispersed through five facilities in Massachusetts and are largely unknown -- indeed, as a practical matter, unknowable -- to Plaintiffs' counsel. The class, moreover, is continuously changing shape as individuals leave the class when their immigration cases conclude and as new members join upon their detention. Such considerations make joinder nearly impossible.

Rule 23(a) also requires a question of law or fact common to the class. Rule 23(a)(2). The key to this analysis is that the truth or falsity of a question will resolve the validity of each class member's claim in a single stroke. <u>Dukes</u>, 131 S.Ct. at 2551.

Defendants argue, as they do with respect to typicality and adequacy, that the definition of "when . . . released" differs depending on the specific facts of an individual's case. That is, as Defendants would have it, the length of time and the quality of an individual's re-integration into his or her community before his or her detention would affect the analysis of whether an alien has been detained

"when . . . released."  In other words, apparently, if any individual lived peaceably and constructively in the community, the Defendants' calculation of the reasonable time to take him into custody following his release from criminal confinement might be different from the calculation where an individual got into trouble or posed some kind of threat.

This argument is, first of all, wobbly as a matter of substance.  Defendants insist that under 1226(c) they not only can, but must, take any alien who is released from criminal custody following conviction of a predicate crime into custody at any time, even many years after release, and hold him or her without bail.  This power, Defendants say, adheres whether the released alien is behaving as the purest saint or the most despicable sinner.  Individual circumstances, Defendants contend, do not matter.

Moreover, Defendants' argument entirely misconstrues the point of this litigation by confusing the issue of whether an alien is entitled, at some point, to a bail hearing with the issue of what the Immigration Judge's decision might take into consideration once the bail hearing

-13-

occurs. An alien who is misbehaving in the community may get his bail hearing, but he may very well not be released. The common question raised by this litigation is whether the bail hearing will ever occur in the first place. After that, Plaintiffs recognize that the Immigration Judge's decision on the substantive question of release will inevitably address the varying situations of the aliens. The litigation is about the first question, not the second.

In sum, even assuming Defendants' interpretation of 1226(c) was correct, the case still presents a single question of statutory interpretation. That alone creates a common question of law sufficient to satisfy Rule 23. Defendants' own memoranda effectively concede this. See, e.g., (Defs.' mem. in Support of Mot. to Dismiss at 10, Dkt. No. 21)("Petitioners' challenge to their detention is premised on one theory - that section 1226(c) does not apply to them because ICE did not immediately detain them on release from custody."); (Defs.' Reply Mem. in Support of Mot. to Dismiss & Opp. to Mot. for Prelim. Inj. at 2, Dkt. No. 37)("Respondents respectfully assert that Mr. Gordon's request for injunctive relief is inappropriate in light of

-14-

the fact that he is seeking habeas relief . . . based on a
question of law where no facts are in dispute.")

More importantly, the court's view of § 1226(c) settles
the case for the entire class.  In deciding the merits, the
court concluded that the phrase "when . . . released" is not
ambiguous and signifies immediacy -- a requirement that is
certainly not satisfied when a detainee is released into
society for more than 48 hours (or longer when a weekend
intervenes) before ICE takes action.  Since the court viewed
the "when . . . released" language as limiting the class of
individuals subject to § 1226(c), and since every class
member here falls outside of that gap, that common
interpretation resolves each member's claims.  Cf.  Comcast
Corp. v. Behrend, -- U.S. --, 133 S.Ct. 1426, 1432
(2013)(noting the permissibility of examining the merits at
the class certification stage).

The third Rule 23(a) requirement is that the claims of
the class representative be typical of the other class
members.  Rule 23(a)(2).  In addition to reiterating their
prior argument, Defendants contend that factual differences
among class members -- including different criminal

-15-

histories or citizenship statuses -- defeat typicality.

The problem with this argument, as the court noted above, is that it conflates the right to a bond hearing with the outcome of that hearing.  See Reid v. Donelan, -- F.R.D. --, 2014 WL 545144 at *4 (D. Mass. Feb. 10, 2014).  The factual differences, if relevant at all, speak to issues that may result in different outcomes at the bail hearings. For instance, an alien may be detained because his or her criminal record demonstrates that he or she is a public safety risk.  The differences do not, however, speak to whether each class member is entitled to a hearing in the first instance.  Instead, all members present the same claim based on an identical legal theory.

The final Rule 23(a) requirement, the adequacy of the representative, has two components.  First, the plaintiff must show that "the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation."  Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Defendants raise two arguments challenging the named Plaintiffs' status as adequate representatives. First, they point out that the class representatives are all lawful, permanent residents, while the class definition includes all "aliens," including some who might have some other technical immigration status. Second, Defendants reiterate their argument that each case depends on factual differences -- such as the length of time following release from criminal confinement before apprehension and detention by ICE -- thus rendering class treatment inappropriate.

Defendants' first argument offers a distinction without a difference. It is impossible to conceive of any way in which the situation of a lawful permanent alien would, in itself, differ to any significant degree from the situation of any other member of the class for purposes of the analysis of § 1226(c). Defendants fail to suggest any rationale by which a class member's technical status would make any difference for purposes of this litigation.

Defendants' second objection has already been addressed. For the reasons discussed above, it is without merit.

As for the second Rule 23(a)(4) requirement,
Plaintiffs' counsel easily jumps over the hurdle.  Class
counsel have considerable experience in the area of
immigration law generally (and mandatory detention in
particular), have already devoted considerable resources
into the case, and are willing to ensure that all members
will be adequately represented.  (Pls' Mem. in Supp. of
Class Cert. at 15, Dkt. No. 103.)  They thus satisfy this
element.[4]

Ultimately then, Plaintiffs have satisfied each element
of Rule 23(a).  It is therefore appropriate to turn to Rule
23(b).

2.  Rule 23(b)(2)

In addition to satisfying Rule 23(a), Plaintiffs must
establish that the class fits into one of the three
categories of Rule 23(b).  Here, the most applicable is Rule
23(b)(2), or an "injunctive class."  To move forward under
that section, Plaintiffs must show that "the party opposing
the class has acted or refused to act on grounds generally

---

[4] For similar reasons, Plaintiffs' counsel satisfies
Rule 23(g).  See Connor B ex. rel. Vigurs v. Patrick, 272
F.R.D. 288, 297 (D. Mass. 2011).

-18-

applicable to the class, making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2).

Defendants do not object to Plaintiffs' argument on this point; this is precisely the type of case that this category was designed for. See Connor B., 272 F.R.D. at 297-98. Indeed, challenges to the interpretation of an immigration statute are typical Rule 23(b)(2) classes. See, e.g., Campos v. I.N.S., 188 F.R.D. 656, 659 (S.D. Fla. 1999); Vargas v. Meese, 119 F.R.D. 291 (D.D.C. 1987). Plaintiffs seek only injunctive and declaratory relief, nothing more. No issue of damages will muddle the analysis. Dukes, 131 S.Ct. at 2557. Instead, a single injunction and declaratory judgment -- one ordered below -- will provide relief to the entire class. The class therefore also satisfies Rule 23(b).

### 3. Contours of the Class

Though the court previously explained why it was limiting the class to individuals not detained within forty-eight hours of release from criminal custody, it is worth reiterating the basis for this decision. Gordon, 2014 WL

-19-

1274059 at *2. The 48-hour limit (or five-day limit when a two- or three-day weekend intervenes) recognizes the practical problems Defendants noted that they would experience if the court held that § 1226(c) could only be invoked when there was a direct immediate transfer of an alien from criminal to immigration custody. (Defs' Opp. to Mot. for Sum. J., Dkt. No. 89.) Plaintiffs initially argued that a delay of a few hours, or even less, might violate the statute's requirement that an alien be detained when released from criminal custody. In establishing a more deferential temporal boundary to the defined class, the court is not intending to say that those detained within forty-eight hours are necessarily barred from any remedy. Indeed, at least one other court has recently certified a class including those individuals as well. See Khoury v. Asher, –– F. Supp. 2d ––, 2014 WL 954920 at *12-13 (W.D. Wash. March 11, 2014). All the court intends to suggest is that those aliens, if they are entitled to relief, must obtain it on an individual basis.[5]

_____

[5] Given that a great majority of those not immediately detained upon release will be detained after forty-eight hours, it is clear that this more forgiving definition of

-20-

The court is satisfied that class resolution is appropriate here and therefore allowed Plaintiffs' motions for class certification.[6]

B.    <u>Motion for Summary Judgment</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences from those facts in that party's favor.  <u>Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 588 (1st Cir. 2004).  In the absence of a dispute over a genuine issue of material fact, summary judgment is appropriate.  <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1 (1st Cir. 1997).

Though Defendants preserve their objection to what they see as an incorrect interpretation of § 1226(c) -- indeed, they are appealing it -- they acknowledge that under the law

---

the class will not affect the numerosity analysis.

[6] If the court had not chosen the road more traveled, Rule 23, it still could, and would, have certified this class as a representative habeas action under <u>U.S. ex rel. Sero v. Preiser</u>, 506 F.2d 1115 (2d Cir. 1974), for the same reasons discussed.

of the case no genuine dispute of fact exists. See Arizona
v. California, 460 U.S. 605, 618 (1983). Instead,
Plaintiffs are entitled to judgment as a matter of law
because the court's prior interpretation of § 1226(c) -- one
it reaffirms today -- construed the phrase "when . . .
released" as containing an immediacy requirement, limiting
the class of individuals subject to mandatory detention
without a right to a bail hearing. To reach that
conclusion, the court engaged in a Chevron analysis to
determine whether it should defer to the Board of
Immigration Appeal's ("BIA") decision in Matter of Rojas, 23
I&N Dec. 117 (BIA 2001). See Chevron U.S.A., Inc. v. Nat'l
Res. Def. Council, Inc., 467 U.S. 837 (1984).

First, it was necessary to examine the plain meaning of
the statute, the congressional intent underlying the law,
and the structure of the statute. Gordon, 2013 WL 6905352
at *4-7. All three made manifest the fact that Congress
only intended to subject a limited class of aliens to no-
bail detention -- those that were detained "when . . .
released." Given this, no deference to the BIA was
appropriate.

Despite the conclusion at step one, the analysis proceeded to step two of <u>Chevron</u>.  There, <u>even</u> <u>if</u> the language <u>were</u> ambiguous, deference would still not be proper.  <u>Id.</u> at *8-9.  First, the BIA's interpretation unreasonably allowed for no-bail detention at <u>any</u> point after release -- ten, twenty, or even thirty years after criminal confinement and the resumption of a law-abiding life.  Second, the interpretation was capricious and provided Defendants with unconstrained discretion that Congress never intended to bestow.

Finally, the court considered the Third and Fourth Circuit's opinions respecting the "loss of authority" line of cases.  <u>Id.</u> at *9-10, <u>citing</u> <u>Sylvain v. Att'y Gen. of U.S.,</u> 714 F.3d 150 (3d Cir. 2013); <u>Hosh v. Lucero,</u> 680 F.3d 375 (4th Cir. 2012).  Those courts reasoned that any temporal limitation on § 1226(c) would improperly penalize the government for its inaction.  According to these authorities, the phrase "when . . . released" could not be construed as containing <u>any</u> time limitation, however infinite, since the violation of this time limit would disable immigration authorities from detaining an alien

without right to a bail hearing.  This court disagreed,
concluding that the relevant grant of authority is the power
to detain -- power with its genesis in § 1226(a).  Nothing
in this court's construction of 1226(c) would inhibit
Defendants' right to detain any alien, only their right to
detain without a bail hearing.  Sub-section (c), rather than
providing an independent grant of the power to detain,
merely provides a limited exception to the broader authority
set forth under § 1226(a).  The "loss of authority" cases
are thus inapplicable to the analysis here.

After carefully re-weighing its rationale, this court
concludes that its construction of § 1226(c) is not only the
most sensible way to interpret the phrase "when . . .
released" but most accurately reflects what must have been
the Congressional intent.  Since that interpretation drives
the analysis of the issues raised by this case, Plaintiffs
are entitled to judgment as a matter of law.

C.    Relief

Given the summary judgment ruling, the question of what
relief Plaintiffs are entitled to, if any, moves into the
center ring.  Here, Plaintiffs request both injunctive and

declaratory relief. Defendants insist that, if any equitable relief is provided at all, only a declaratory judgment is permitted. As noted above, the issue of proper relief raises three questions: Does the court possess the authority to issue injunctive and declaratory class-wide relief? Is it appropriate in this case? If so, what should the relief look like?

1.  Can the Court Order Class-Wide Relief?

Defendants argue that 8 U.S.C. § 1252(f)(1) bars any class-wide injunction. That statute states that no court "shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221-1231] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."

In Arevalo v. Ashcroft, the First Circuit defined two of the key terms of that section. 344 F.3d 1, 7 (1st Cir. 2003). It found that "enjoin" constitutes permanent injunctive relief and that "restrain" signifies temporary relief. Id. Critically, the Court of Appeals did not tackle the phrase "the operation of."

In this case, the court's injunction will not prevent the law from operating in any way, but instead would simply force Defendants to comply with the statute. The purposes underlying § 1252(f)(1) and associated case law justify this distinction.

When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, Div. C, § 306, 110 Stat. 3009, it sought to prevent courts from enjoining the lawful procedures established by Congress for removing non-citizens. H.R. Rep. No. 104-469, pt. 1, 1996 WL 168955 at 161 (1996). The goal, in essence, was to prevent a court from interfering with the government's ability to remove aliens. For instance, if the court were to enjoin all removals by declaring a specific part of the immigration code improper, class relief would not be available. That purpose militates against the application of § 1252(f)(1) here because the court need not prohibit the operation of any part of the law to correct the government's incorrect application of it.

Case law interpreting § 1252(f)(1) has also outlined this distinction. The Ninth Circuit in Rodriguez v. Hayes,

591 F.3d 1105 (9th Cir. 2010), said it best.  "Where . . . a petitioner seeks to enjoin conduct that allegedly is not even authorized by the statute, the court is not enjoining the operation of [the statute], and § 1252(f)(1) therefore is not implicated."  Id. at 1120 (internal quotations and citations omitted); See also Gayle v. Johnson, -- F. Supp. 2d --, 2014 WL 1044074 at *19 (D.N.J. Mar. 14, 2014)("In focusing on the nature of Plaintiffs' challenge -- which, again, is based on the claim that the Government's current mandatory detention procedures violate the INA -- it does not appear that § 1252(f)(1) precludes Plaintiffs from pursuing injunctive relief.")[7]

Here, the court will be ordering Defendants to apply § 1226(a) and its accompanying regulations to members of the class, as is required by the statute.  Since an injunction will therefore not interfere with the operation of the law, class-wide relief is available.[8]

_____

[7] Class-wide declaratory relief is also not proscribed under these conditions.  See Reid, 2014 WL 545144 at *8.

[8] At oral argument, Defendants appeared to concede, at least with respect to declaratory relief, that the court could issue a class-wide order finding § 1226(a) applicable to the class without running afoul of § 1252(f)(1).

## 2. Is Equitable Relief Appropriate?

Though equitable relief may be permissible, it is also important to examine whether it is necessary. To obtain declaratory relief, Plaintiffs must show that it "will serve the interests of the litigants or the public." Metro. Prop. & Liab. Ins. Co. v. Kirkwood, 729 F.2d 61, 62 (1st Cir. 1984). An injunction is appropriate where a plaintiff, in addition to succeeding on the merits, establishes: (1) irreparable harm; (2) the absence of an adequate remedy at law; (3) a favorable balance of hardship; and (4) a vindication of (or at least no offense to) the public interest. Esso Standard Oil v. Lopez-Freyes, 522 F.3d 136, 148 (1st Cir. 2008) citing eBay v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

No serious dispute exists that, if the court finds in Plaintiffs' favor, declaratory relief can issue. Given that concession, and that a declaratory judgment is in Plaintiffs' and the public's interest, as discussed below, that remedy will be provided.

Plaintiffs have also satisfied their burden for obtaining injunctive relief. First, Plaintiffs are

suffering, and will continue to suffer, irreparable harm
absent a permanent injunction.  Each day Plaintiffs remain
in detention without an opportunity to seek release on bail
is time the class members cannot recover.  See McGuinness v.
Pepe, 150 F. Supp. 2d 227, 230 n.8 (D. Mass. 2001).
Defendants have wrongfully deprived all class members of an
opportunity they were statutorily entitled to the moment
they were detained.  See Rodriguez v. Robbins, 715 F.3d
1127, 1144 (9th Cir. 2013)(noting that class members'
unnecessary detention constituted irreparable harm.)  A
binding order is the only guarantee that this deprivation
will be rectified.[9]  The balance of the equities also favors
Plaintiffs, and an injunction is in the public interest.
Plaintiffs have a significant liberty interest in (and
statutory right to) the opportunity to argue for their
conditional release.  Moreover, it is in the public's
interest generally for statutes to be implemented consistent
with the plain language used to embody them, and in the way
Congress intended.

---

[9] Given that this harm is not compensable by monetary
damages, obviously no adequate remedy at law exists.

It is important to emphasize that this court's order leaves Defendants' and the public's interests well protected. Defendants' main concern is ensuring public safety and processing the orderly removal of certain aliens. An injunction will not require a single class member to be released from custody but will merely provide them the opportunity to argue for release. The Immigration Judge presiding at the bail hearing will retain full power to detain any alien who presents a flight risk or danger to the public or any person. See Castaneda v. Souza, 952 F. Supp. 2d 307, 320-21 (D. Mass. 2013)(stating that the government would not be prevented "from detaining even a single criminal alien"). It is also worth noting that the burden on the government to hold these bail hearings -- which are held regularly under 1226(a) -- is minimal. Reid v. Donelan, -- F. Supp. 2d --, 2014 WL 105026 (D. Mass. Jan. 9, 2014).[10] Accordingly, the harm to Plaintiffs here vastly outweighs any incidental burden to Defendants.

------

[10] As the Ninth Circuit has made clear, "even if the government faced severe logistical difficulties in implementing the order," it "cannot suffer harm from an injunction that merely ends an unlawful practice." Robbins, 715 F.3d at 1145-46.

Therefore, since the relevant factors all conclusively suggest that a permanent injunction is necessary, the court will permanently enjoin Defendants' wrongful application of § 1226(c) to the class.

### 3. The Substance of the Relief

The parties present competing proposed orders for the court's consideration. (Dkt. Nos. 83 & 89.) Four critical differences separate the two. First, Defendants seek to limit any remedy to current class members. However, they fail to provide any sensible rationale for this limitation. Indeed, such a restriction would be inappropriate as it would allow Defendants to apply their erroneous interpretation of § 1226(c) to future class members.

Second, the parties dispute how the hearings should unfold: Plaintiffs seek an order that places the burden on the government to schedule and provide bail hearings automatically, and Defendants believe that the regulations governing bail determinations under § 1226(a) should apply. Two considerations support Defendants' position.

Initially, any specific mandate as to how or when the bail hearings should occur has the potential to run up

against the proscription in § 1252(f)(1).[11]  Although the
court certainly has jurisdiction to order Defendants to
apply § 1226(a) to the class -- as this is required by the
statute itself -- it is not self-evident that it has the
authority to tinker with the specifics called for by that
section of the law.  In limiting an order to the procedures
currently available under § 1226(a) and its associated
regulations, the court can provide class members with the
process they are entitled to while simultaneously ensuring
that it does not exceed any jurisdictional or statutory
boundary.

More fundamentally, Plaintiffs request a remedy that is
superior to what § 1226(a) detainees are entitled to.
Although the court has its concerns about the procedures
used to effectuate the requirements of § 1226(a) --
specifically the time between detention and a bail hearing
as well as the ability of a detainee to ensure his or her
request for a hearing makes its way to an Immigration

_____

[11] As discussed above, that section states that no court
"shall have jurisdiction or authority to enjoin or restrain
the operation of the provisions of [8 U.S.C. §§ 1221-1231]."

official -- as a matter of fairness, class members in this case should not receive more protection than their 1226(a) counterparts who, it should be noted, have not committed any § 1226(c) predicate offense.  The court does recognize that the Ninth Circuit provided additional safeguards in a related § 1226(c) matter,  Robbins, 715 F.3d at 1131, but believes that the procedures of § 1226(a) provide the reasonably effective remedy class members in this case are entitled to without overlaying a new remedial structure that only 1226(c) aliens would be eligible for.

The parties also disagree about the length of time the government should have to conduct the bail determinations. Plaintiffs argue that the government should have thirty days to provide hearings to all current class members. Defendants suggest ninety days.  The court, however, need not get into such details because, once this court's order issues, all class members are to be treated as § 1226(a) detainees and enjoy immediate access to the process that this section -- and its accompanying regulations -- provides them.  It should be emphasized that it is not burdensome to expect the government to complete initial determinations,

-33-

and provide bail hearings if requested, to every current class member within ninety days at the most. This is particularly true in light of the fact that Defendants have expeditiously provided bail hearings to the named Plaintiffs, have conducted a screening of the class and have a sense of who is entitled to a hearing, and often hold the hearings as part of a master calendar session on one day.[12]

Plaintiffs' final request is that Defendants provide class counsel with information about the class. They also request that Defendants file a report with the court after the bail determinations are conducted. Plaintiffs argue that provision of this information is essential to ensure that all eligible individuals receive the remedy they are entitled to. Defendants include no such requirement in their proposed order. Since disclosure of this information is essential to allow Plaintiffs and the court to monitor whether Defendants have complied with the court order, Plaintiffs' suggestion on this point will be adopted.

## IV.   CONCLUSION

---

[12] The court may reconsider this part of its order if the government fails to comply swiftly with the remedy set out below.

An individual's right to due process is not eradicated
simply because he or she has been convicted of a crime at
some point in his or her life.  Congress, recognizing this,
only mandated mandatory immigration detention without bail
in narrow circumstances: where a prompt transfer from
criminal to immigration custody was essential to protect the
public and ensure that the specified alien would be
available for ultimate removal.  When the government does
not detain an alien promptly upon release from criminal
custody, the rationale for mandatory detention dissolves.
When delay beyond two to five days occurs, the individual --
one who has already returned to society -- is entitled to
the opportunity to argue for his or her conditional release.
Since the phrase "when . . . released" simply cannot mean
"whenever immigration authorities get around to it, even
decades later," the court's construction of the statute
reflects the most likely expression of Congress's intent

Accordingly, the court hereby ALLOWS Plaintiffs'
Motions for Summary Judgment. (Dkt. Nos. 83 & 107.)  The
court DECLARES as follows:

- As to every class member, the mandatory detention
  provision, 8 U.S.C. § 1226(c), applies only to

aliens detained by the Department of Homeland
Security ("DHS") within forty-eight hours of
release from criminal custody, or if a weekend or
holiday intervenes, within no more than five days.

- As to every class member, an alien who is not taken
  into immigration custody within forty-eight hours
  of release from the relevant prior non-DHS custody
  (or if a weekend or holiday intervenes, within no
  more than five days) is subject to 8 U.S.C. §
  1226(a), and is entitled to a bond hearing.

In accordance with that finding, the court hereby

ORDERS the following:

- Defendants shall immediately cease and desist
  subjecting all current and future class members --
  that is, aliens not detained within forty-eight
  hours of release from the relevant prior non-DHS
  custody (or if a weekend or holiday intervenes,
  within no more than five days) -- to mandatory
  detention under 8 U.S.C. § 1226(c).

- Defendants shall immediately determine the custody
  of every current class member under 8 U.S.C. §
  1226(a) and timely provide a bond hearing to every
  class member that seeks a redetermination of his or
  her custody by an Immigration Judge pursuant to 8
  C.F.R. § 1003.19 & 1236.1(d).

- Defendants shall determine the custody of every
  future class member under 8 U.S.C. 1226(a) and
  provide a bond hearing to every class member that
  seeks a redetermination of his or her custody by an
  Immigration Judge pursuant to 8 C.F.R. § 1003.19 &
  1236.1(d).

- On or before June 5, 2014, Defendants shall provide
  class counsel with a list of identified class
  members, including their names and alien numbers,
  and the facility in which they are detained.

-36-

- On or before July 21, 2014, Defendants shall submit to the Court a report detailing the following:

    - any custody determinations made for Plaintiffs and class members, including the dates they were made, the determination, and, if applicable, whether the individual petitioned for a bail redetermination in front of an Immigration Judge

    - any bond hearings held for Plaintiffs and class members, including the dates they were held and the outcome of those hearings, including the amount of any bond set; and,

    - the process and criteria by which class members have been identified.

The clerk shall set this matter for a status conference on September 15, 2014, at 3:00 p.m., to review Defendants' compliance with this order, and to discuss entry of final judgment.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge